NORTH CAROLINA　　　　　　　　　　　　IN THE GENERAL COURT OF JUSTICE
　　　　　　　　　　　　　　　　　　　　　　SUPERIOR COURT DIVISION
GUILFORD COUNTY　　　　　　　　　　　　　　　　20 CVS 4461

NATTY GREENE'S BREWING
COMPANY, LLC, NATTY GREENE'S
DOWNTOWN, LLC, EJE, INC. d/b/a CAFE
PASTA, NATTY GREENE'S CREEKSIDE,
LLC d/b/a KAU, JAKE'S DINER OF　　　　　　　**FIRST AMENDED COMPLAINT**
WENDOVER, INC. d/b/a JAKE's DINER,
DAAB, INC. d/b/a JAKE'S DINER, JAKE'S
OF DRAWBRIDGE, INC. d/b/a JAKE'S
DINER, JAKE'S OF BATTLEGROUND,
LLC d/b/a JAKE'S DINER, RIO GRANDE
#14, INC d/b/a RIO GRANDE MEXICAN
KITCHEN, RIOS, INC. d/b/a RIO GRANDE
MEXICAN KITCHEN and RIO GRANDE
FRIENDLY, INC. d/b/a RIO GRANDE
MEXICAN KITCHEN,

　　　　Plaintiffs,

　　v.

TRAVELER'S CASUALTY INSURANCE
COMPANY OF AMERICA, TRAVELER'S
INDEMNITY COMPANY, SENTINEL
INSURANCE COMPANY, LIMITED,
UTICA NATIONAL INSURANCE GROUP,
FRANKENMUTH MUTUAL INSURANCE
COMPANY and STATE AUTOMOBILE
MUTUAL INSURANCE COMPANY,

　　　　Defendants.

NOW COME Plaintiffs and file this Complaint and allege and say:

## PARTIES & JURISDICTION

1.　　Plaintiffs are entities that own and operate restaurants and bars in Guilford County, North Carolina.

2. At all times mentioned herein, Defendants were licensed to do business in the State of North Carolina, selling business owners, property and casualty insurance policies to bars, restaurants, caterers, banquet halls, and other hospitality businesses.

3. Each of the defendants sold an insurance policy effective at all relevant times to at least one of the plaintiffs which provided applicable insurance coverage as alleged herein.

4. This Court has jurisdiction over this matter because all named Plaintiffs are residents of Guilford County and each of the defendants sold insurance products to them in this county.

5. The Centers for Disease Control and the World Health Organization ("WHO") have for years been warning about the possibility of an airborne virus that could cause a worldwide scare and pandemic.

6. Coronavirus (COVID-19) (hereinafter "the virus") is a highly contagious airborne virus that has rapidly spread and continues to spread across the World. The fear that it would arrive and spread in the United States was particularly great throughout March, 2020 and, eventually, it did arrive.

7. WHO has declared the virus to be a pandemic.

8. The fear of the COVID-19 pandemic is a crisis that has impacted American life on a massive scale including the public's ability to congregate in bars and restaurants.

9. In an effort to prevent the virus from arriving, and then from further spreading, federal and state authorities have mandated social distancing and have greatly limited the number of people who can gather in any given setting.

10. Greensboro restaurants and bars were poised to seize on the positive economic impact of both the Atlantic Coast Conference ("ACC") and National Collegiate Athletic

2

Association ("NCAA") basketball tournaments that were to be hosted at the Greensboro Coliseum.

11. Businesses had been planning and investing for years to reap the economic benefits from the two week period from March 9-21, 2020.

12. In particular, Natty Greene's Brewing Company, LLC had its new location directly across from the Greensboro Coliseum and was prepared and ready to seize the opportunity to earn its necessary operating revenue for the year.

13. Crowds began to fill Greensboro restaurants and bars leading up to and at the beginning of the ACC Tournament.

14. On Wednesday, March 11, 2020, public fear and commotion that the virus would arrive and spread caused the Atlantic Coast Conference to order fans to not to attend the ACC Tournament on the following day.

15. On Thursday, March 12, 2020, the Atlantic Coast Conference cancelled the tournament. The NCAA quickly followed suit.

16. In an effort to prevent the arrival and spread of the virus at locations throughout the State, North Carolina Governor Roy Cooper on March 17, 2020 issued Executive Order No. 118 which ordered the complete closure of the "dine-in" portion of restaurants for the plaintiffs. Furthermore, Governor Cooper's order was clear: "Bars are directed to close." A violation of the Order was deemed by the Governor to be a crime.

17. On March 27, 2020, Governor Cooper issued Executive Order No. 121 that: (a) directs North Carolina residents to stay in their homes except when performing "essential" activities; (b) prohibits gatherings of 10 or more people; and (c) requires "non-essential" businesses to cease operations. Governor Cooper did not issue this Order because of

3

damages being caused by the virus itself, but instead to "mitigate community spread" of the virus, i.e., to prevent or minimized damages potentially caused by the virus. However, the Governor's Order and the fear and commotion created an entirely different category of damages for the plaintiffs.

18. Public fear and commotion and, significantly, the governmental actions and closures implemented because of and in response to the threat of the virus have caused Plaintiffs to incur significant financial losses and damages.

19. Since that date of Governor Cooper's Order, countless North Carolina bar and restaurant operators, among other businesses, have made claims under their business owner, property and casualty insurance policies to recover the business revenues they have lost, and continue to lose, as a result of the public fear and commotion concerning the virus, the closures implemented to prevent the arrival and spread of the virus and Governor Cooper's Executive Order.

20. Insurers, including Defendants, have denied every or nearly every claim for lost business revenues by claiming their insureds have no coverage for various incorrect reasons. The policies provide coverage for loss of business revenues. Defendants accepted premiums for such coverage and now, when the critical time of need has arrived for their insureds, they refuse to provide the coverage for their restaurant and bar policyholders.

21. At all times mentioned herein, the insurance policies sold by Defendants provide coverage for the plaintiff restaurants/premises for loss of business revenues and the physical loss of that money. The income not arriving was as physical as it can get and the very reason for the purchase of the insurance offered for sale by Defendants.

4

22. Plaintiffs have performed all obligations imposed upon them by the policies including, but not limited to, the payment of premiums and the timely reporting of claims to the Insurer's agents.

23. Some of Defendants' policies exclude coverage "caused directly or indirectly by ... virus." Others do not. None, however, exclude coverage for damages caused by public fear and commotion and/or governmental action implemented in an effort to prevent the arrival of the virus or to mitigate the spread of the virus as opposed to damages caused by the virus itself.

24. Some of Defendants' policies define in their exclusions a virus to be an agent that "induces disease" as opposed to causing wet or dry rot. Others do not make such a distinction and use the terms "rot" and "virus" interchangeably as if they are synonyms.

25. None of the policies define "Direct Physical Loss." It is hard to imagine that the loss of business revenues can be anything but "direct" and "physical." To be sure, money that was previously physically arriving is now not physically arriving. It was because of the possibility of these monetary physical losses that Plaintiffs chose to pay policy premiums to Defendants for decades.

### FIRST CAUSE OF ACTION
(For a Declaratory Judgment, N.C.G.S. §1-253, *et seq.*)

26. Plaintiffs reallege the allegations contained above.

27. While Plaintiffs' damages continue to accrue, at this critical time a declaratory judgment is necessary to resolve a real bona fide dispute that exists between the parties (and many other claimants) regarding Defendants' vague insurance policies.

28. N.C. Gen. Stat §1-253, *et seq.* permits North Carolina courts to resolve such disputes through the entry of a declaratory judgment.

5

29. Plaintiffs seek such a declaration of the Court that coverage exists under the Defendants' policies for the damages caused by public fear and commotion and the governmental closures implemented as a result of the threat of the arrival and potential spread of the the virus.

## SECOND CAUSE OF ACTION
(For Breach of Contract)

30. Plaintiffs reallege the allegations contained above.

31. Defendants entered into a contract with Plaintiffs as alleged herein for which Plaintiffs have paid policy premiums.

32. Defendants have breached those contracts by not paying what they owe to Plaintiffs pursuant to the policies/contracts entered into between the parties.

33. Although each Plaintiff's damages from the breaches are ongoing they have to date already suffered significant damages.

34. Plaintiffs have each been damaged as a result of the breach of contract by the Defendant with which they have entered into a contract and are entitled to recover in excess of $25,000.

WHEREFORE, Plaintiffs pray the Court for the following relief:

1. That the Court declare Plaintiffs have all applicable coverages under the insurance policies sold to them by Defendants;

2. Compensatory Damages in excess of $25,000;

3. Costs and pre and post-judgment interest as permitted by North Carolina law; and

4. For such other and further relief that the Court deems proper.

This the 8th day of April, 2020.

                                                           Drew Brown
                                                         Jeffrey K. Peraldo
                                                         James R. Faucher
                                                         *Attorneys for Plaintiffs*

FOR THE FIRM:

**Brown, Faucher, Peraldo & Benson, PLLC**
**Greensboro Law Center**
822 N. Elm St., Suite 200
Greensboro, North Carolina 27401
Telephone: (336) 478-6000
Facsimile: (336) 273-5597
drew@greensborolawcenter.com
jeff@greensborolawcenter.com
james@greensborolawcenter.com