# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NATTY GREENE'S BREWING COMPANY, LLC, NATTY GREENE'S DOWNTOWN, LLC, EJE, INC. d/b/a CAFE PASTA, NATTY GREENE'S CREEKSIDE, LLC d/b/a KAU, JAKE'S DINER OF WENDOVER, INC. d/b/a JAKE's DINER, DAAB, INC. d/b/a JAKE'S DINER, JAKE'S OF DRAWBRIDGE, LLC d/b/a JAKE'S DINER, JAKE'S OF BATTLEGROUND, LLC d/b/a JAKE'S DINER, RIO GRANDE #14, INC d/b/a RIO GRANDE MEXICAN KITCHEN, RIOS, INC. d/b/a RIO'S MEXICAN GRILLE and RIO GRANDE FRIENDLY, INC. d/b/a RIO GRANDE MEXICAN KITCHEN, | **Case No.: 1:20-cv-437-CCE-JEP** |
| Plaintiffs, | |
| v. | |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, SENTINEL INSURANCE COMPANY, LIMITED, REPUBLIC-FRANKLIN INSURANCE COMPANY, FRANKENMUTH MUTUAL INSURANCE COMPANY and STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

## STATE AUTOMOBILE MUTUAL INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant State Automobile Mutual Insurance Company ("State Auto") respectfully moves for judgment on the pleadings dismissing the claims asserted against it in Plaintiffs' Second Amended Complaint.

## I.    INTRODUCTION

The contagiousness of the COVID-19 virus caused international health organizations to promulgate worldwide guidelines that restrict interactions between people. Countries followed with interpersonal restrictions, as did states and municipalities, all aimed at containing a global health crisis. <u>None</u> of those government actions were caused in any way by physical loss of or physical damage to property at any particular address. For example, even the most scientifically sanitized restaurant with no verifiable virus contamination would have been subject to the same governmental regulations as a neighboring restaurant which perhaps had unknowingly hosted customers infected with COVID-19. <u>The governmental restrictions were simply not caused by property damage at any insured address, and of course did not cause direct physical loss of or damage to property at any of the insured premises.</u>

The State Auto Policies <u>do not</u> insure economic repercussions of statewide public health proclamations that are unrelated to any property conditions at the insured premises. Instead, State Auto's coverage is rooted in an infinitely narrower risk that is wholly dependent upon <u>direct physical</u> loss of or <u>direct physical</u> damage to property at or around each of the four specific insured addresses on four distinct insurance contracts.

As set forth below, the policy provisions at issue demonstrate that Jake's Diner of Wendover, DAAB. Inc., Jake's of Drawbridge, LLC, and Jake's of Battleground, LLC (collectively, "the Jake's Plaintiffs") have not pled the prerequisites to a covered business interruption claim, and that the North Carolina public health orders at issue cannot create

2

such a covered claim. For example, each Jake's Plaintiff has a separate insurance contract covering damage to a different insured address, which each independently require:

**1. Business Income Coverage 5(f)** (Doc. 41, p. 6-7) requires each Jake's Plaintiff to establish loss of business income due to (1) the "necessary suspension" of their operations; (2) during the "period of restoration"; **but** (3) only if the suspension was **caused by** direct physical loss of or direct physical damage to property at each insured premises. Here, none of the Jake's Plaintiffs have pled direct physical loss of or damage to any property that caused them to suspend operations. In fact, they plead the *inverse:* that the government-induced suspension of operations caused economic losses at four insured premises. (Doc. 27, ¶¶ 18-19) These claimed economic losses cannot, as a matter of law, constitute "direct physical loss of or damage to" insured property.

**2. Civil Authority Coverage 5(i)** (Doc. 41, p. 10) requires that each Jake's Plaintiff establish that damage to property caused a dangerous physical condition, which then caused a civil authority to prohibit all access to insured's restaurants. However, the civil authority orders at issue here were designed to control the spread of COVID-19, and not to respond to property damage. Furthermore, the civil authority orders did not prohibit all access to each insured premises, as required to trigger this coverage.

**3. Extra Expense Coverage 5(g)** (Doc. 41, p. 8-9) requires the Jake's Plaintiffs to establish that, due to the "direct physical loss or damage to property," they incurred expenses that would not otherwise have been incurred. Again, the Jake's Plaintiffs' allegations of losses due to governmental orders and public fear and commotion do not, as

a matter of law, constitute <u>direct physical</u> loss of or <u>direct physical</u> damage to property at any of the four insured locations.

     **4. Virus Exclusion, Ordinance Exclusion** (Doc. 41, p. 11-12): This claim is not covered because it does not involve suspended operations caused by physical loss or damage to any property. The Ordinance or Law Exclusion clarifies the lack of coverage for compliance with government use restrictions, in the absence of covered damages. Furthermore, even when covered damages might be intermixed with *indirect losses* arising from a virus that is capable of inducing physical distress, such indirect losses would be excluded by the Virus Exclusion B(1)(j).

     The global financial and health suffering from COVID-19 has ravaged all communities and businesses. However, the economic devastation wrought by this pandemic does not permit the rewriting of State Auto's insurance contracts to make them into a societal funding mechanism, which the terms themselves indicate is not the intent. Indeed, North Carolina's own Insurance Commissioner has said as much in an open letter to business owners in which he indicates that **"<u>business interruption policies are not designed to provide coverage for viruses, diseases or pandemic-related losses because of the magnitude of the potential losses.</u>"** (NCDOI letter, attached hereto as Exhibit A).[1] The Jake's Plaintiffs' claims simply do not fall within the terms of the State Auto Policies, and State Auto is entitled to judgment on the pleadings.

---

     [1] A court may take judicial notice of a letter from a government agency. *Shore v. Charlotte-Mecklenburg Hosp. Auth.,* 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019).

## II.    BACKGROUND FACTS

### A.    The Jake's Plaintiffs Allege Loss of Income from Governmental Orders, and Not Direct Physical Loss of or Damage to Property.

The Jake's Plaintiffs are four separate restaurants in Greensboro, North Carolina. Each diner is located at a separate address, insured by different insurance contracts covering physical loss or damage at different locations.

Beginning in March 2020, the State of North Carolina, like much of the world, became plagued by the Coronavirus (COVID-19). (Doc. 27, ¶6). The Amended Complaint alleges generically that "Greensboro restaurants" expected lucrative business in March 2020 because the Atlantic Coast Conference ("ACC") and National Collegiate Athletic Association ("NCAA") basketball tournaments were to be hosted in Greensboro. (*Id.* at ¶¶10-11). However, on March 12, 2020, public fear of the virus caused the ACC and NCAA to cancel the tournaments. (*Id.* at ¶¶ 14-15). **There are no allegations specific to the plans, expectations or losses of any Jake's Plaintiff.**

On March 17, 2020, Governor Cooper issued Executive Order No. 118, which limited operations of restaurants in response to the COVID-19 virus (*Id.* at ¶16). Order No. 118's stated purpose was "to protect the health and safety of the residents of North Carolina, slow the spread of the COVID-19 outbreak, protect our most vulnerable citizens, and avoid strain on our health care system." (Doc. 41-2, p. 3). The Governor's Order specifically permitted restaurants to remain accessible for carry-out, drive-through, delivery...to create an environment where staff and patrons maintain social distancing." (*Id.* at p. 4).

5

On March 27, 2020, Governor Cooper issued Executive Order No. 121, which required the cessation of "non-essential" business operations in order to "mitigate community spread of COVID-19." (Doc. 27, ¶17; Doc. 41, ¶17). Importantly, restaurants were defined as "essential businesses" that were still to be accessible and permitted remain open for restricted operations. (Doc. 41-3, p. 8, § C.19).

The Jake's Plaintiffs acknowledge that the State Auto Policies require "direct physical loss of or damage to property," which caused business suspension, in order to trigger business income coverage. However, they each allege the opposite: that the governmental restrictions issued in response to the virus caused them to sustain financial losses. (Doc. 27, ¶¶18, 21, 25). With no facts involving direct physical loss or damage to property, the Jake's Plaintiffs set forth their naked legal conclusion that loss of business income is a "direct" and "physical" loss of "money that was previously physically arriving is now not physically arriving." (Doc. 27, ¶25).

The Jake's Plaintiffs explained the following on their shared Facebook page[2] that, as of March 17 when the Governor's Executive Order No. 118 took effect:

---

[2] https://www.facebook.com/Jakes-Diner-681924688518046 (last visited June 24, 2020) (excerpted Facebook pages attached hereto as Exhibit F). This court may take judicial notice of information posted by Jake's Diner on its Facebook website. *Herrera v. Charlotte School of Law, LLC,* No. 2018 WL 192556, *7 (N.C.Super. Apr. 20, 2018) ("As long as the website's authenticity is not in dispute and the fact is "capable of accurate and ready determination," then the Court may take judicial notice of information available on a website."); *Shore v. Charlotte-Mecklenburg Hospital Auth.* 412 F. Supp.3d 568, 573 (M.D.N.C. 2019) (district court agreed to take judicial notice of Secretary of State's website "whose accuracy cannot reasonably be questioned").

ATTENTION!!!

WE WILL STILL BE PROVIDING TOGO SERVICES

(Ex. F, p. 7). A few days later, by March 23, the shared Jake's Plaintiffs' Facebook page explained:

WE'RE STILL OPEN AND WORKING HARD!

Easy Call-in, Online, Curbside, and Delivery Available.

*Id.*

Here is what the operative complaint **does not allege**:

- The Jake's Plaintiffs **do not allege** any actual <u>direct physical</u> loss of or damage to property at any of the four insured locations.

- The Jake's Plaintiffs **do not allege** that the governmental orders were written in response to property damage, or that the orders prohibited all access to their diners. In fact, all Jake's locations remained open throughout the duration of the Stay at Home Order.

**B.      The State Auto Policies Require Direct Physical Loss of or Damage to Property to Trigger Business Income, Extra Expense, and Civil Authority Coverage.**

State Auto issued separate Businessowners policies to each Jake's Plaintiff, (collectively, the "State Auto Policies"), each insuring damage at a different insured location:

- Daab, Inc. - Policy No. 10004939CB (9/16/19 to 9/16/20). (Doc. 41-1, p. 13).

- Jake's of Battleground, LLC - Policy No. 10015517CB (2/3/20 to 2/3/21) (attached hereto as Exhibit B, p. 9).

- Jake's Diner of Wendover, Inc. - Policy No. 10004940CB (9/16/19 to 9/16/20) (attached hereto as Exhibit C, p. 13).

7

- Jake's Diner of Drawbridge, LLC - Policy No. 10004938CB (9/16/19 to 9/16/20).  (attached hereto as Exhibit D, p. 13).

As the Second Amended Complaint acknowledges (Doc. 27, ¶25), direct physical loss is a threshold requirement for coverage under all relevant parts of the State Auto Policies, including Business Income (Section A.5.f.), Extra Expense (Section A.5.g.), and Civil Authority (Section A.5.i).  The Business Income Coverage provides as follows:

**5. Additional Coverages**
  **f.  Business Income**
    **(1) Business Income**
      **(a)**  We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".  The suspension **must be caused** by **direct physical loss of or damage to property at the described premises**.  The loss or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 41-1, p. 24; Ex. B, p. 20; Ex. C, p. 24; Ex. D, p. 24) (Emphasis added).  Similarly, the Extra Expense coverage form requires direct physical loss or damage to property at the insured premises:

  **g. Extra Expense**
    **(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that would not have incurred if there had been no **direct physical loss or damage to property at the described premises**. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 41-1, p. 26; Ex. B, p. 22; Ex. C, p. 26; Ex. D, p. 26) (Emphasis added).  Finally, the Civil Authority form also requires direct physical loss of or damage to property, as well as prohibition of access to the insured premises:

  **i.  Civil Authority**

8

When a Covered Cause of Loss causes **damage to property other than property at the described premises**, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority **that prohibits access** to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage …; and

(2) The action of civil authority if taken in response to dangerous physical conditions resulting from the damage …

(Doc. 41-1, p. 27; Ex. B, p. 23; Ex. C, p. 27; Ex. D, p. 27) (Emphasis added).

This recurring theme of "direct physical loss" is also integrated as a threshold coverage requirement under all three sections (Business Income, Extra Expense, and Civil Authority) that any loss or damage under the policy "must be caused by or result from a Covered Cause of Loss." Covered Causes of Loss under the State Auto Policies include only **direct physical loss** unless otherwise limited or excluded.[3] (Doc. 41-1, p. 20; Ex. B, p. 16; Ex. C, p. 20; Ex. D, p. 20) (Emphasis added).

The contractual requirement of direct physical loss of or damage to property is further demonstrated within the phrase "period of restoration," which is defined as commencing when "direct physical loss or damage" begins and ending when "the property at the described premises should be repaired, rebuilt or replaced." Importantly, the "period

---

[3] Such excluded causes include the enforcement of any ordinance regulating the use of any property (exclusion B(1)(a)), the loss of use (exclusion B(2)(b)), acts or decisions of a governmental body that do not otherwise result in a Covered Causes of Loss (exclusion B(3)(b)), and loss caused by any virus capable of inducing physical distress (exclusion B(1)(j)). (Doc. 41-1, p. 35, 38, 40; Ex. B, p. 31, 34, 36; Ex. C, p. 35, 38, 40; Ex. D, p. 35, 38, 40).

of restoration" <u>does not include</u> any increased period due to the enforcement of any ordinance or law that simply "regulates the use" of any property, independently of direct physical damages." (Doc. 41-1, p. 51-52; Ex. B, p. 46-47; Ex. C, p. 51-52; Ex. D, p. 51-52). As set forth below, even if the Second Amended Complaint could be construed to allege a covered claim (which State Auto disputes), the claim would still be barred by both the Virus and the Ordinance or Law Exclusions.

## III.    QUESTIONS PRESENTED

1.    Does the law permit each Jake's Plaintiff to establish its business suspension was caused by direct physical loss of or direct physical damage to property at the insured premises, as required for Business Income coverage 5(f), where they allege only loss of income due to generalized societal "public fear and commotion" as well as governmental use restrictions?

2.    Does the claim of each Jake's Plaintiff for Civil Authority coverage 5(i) fail as matter of law, where there is no civil authority order pled that (1) was "in response to" a dangerous physical condition resulting from damage to property near each insured premises, and (2) that prohibited access to each insured premises?

3.    Does the claim of each Jake's Plaintiff for Extra Expense coverage 5(g) fail as a matter of law where the Jake's Plaintiffs have not allegedly incurred any extra expenses due to direct physical loss of or damage to property at the insured premises?

4.    Even in the event that each Jake's Plaintiff can establish arguable loss at each premises resulting indirectly from governmental use restrictions to control the COVID-19

virus, are such claims excluded by the Ordinance and Law Exclusion and the Virus Exclusion in each of the Jake's Plaintiffs' policies?

## IV.  LEGAL STANDARDS

### A.  Rule 12(c) Motion for Judgment on the Pleadings

In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), a court views facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.  *Brewer v. Jefferson-Pilot Standard Life Ins. Co.*, 333 F. Supp. 2d 433, 436 (M.D.N.C. 2004).  A motion for judgment on the pleadings should be granted if, "after taking all well pleaded allegations in the complaint as true, the plaintiff can prove no set of facts entitling [it] to relief."  *Id.*  In evaluating a motion for judgment on the pleadings, the Court "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'"  *Live Face on Web, LLC v. Absonutrix, LLC,* No. 1:17cv937, 2018 WL 2121627, *3 (M.D.N.C. May 8, 2018).

### B.  Insurance Policy Interpretation

Where the insurer and insured are citizens of different states, courts apply "the law of the place where the policy is delivered" to interpret the contract.  *Myers v. Ocean Accident & Guarantee Corp.*, 99 F.2d 485, 488 (4th Cir. 1938).  Under North Carolina law, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction."  *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (2000).  If the policy language is clear, the court must use the plain meaning of the words to give effect to the parties' intent. *National Quarry Svcs., Inc. v. First*

11

*Mercury Ins. Co., Inc.,* 372 F. Supp.3d 296, 302 (M.D.N.C. 2019). "[T]he courts should resist piecemeal constructions and should, instead, examine each provision in the context of the policy as a whole." *DeMent v. Nationwide Mut. Ins. Co.,* 544 S.E.2d 797, 800 (N.C. App. 2001).

## V.    ARGUMENT

### A.    Business Income Coverage Under Section 5.f. Does Not Apply Because There is No Direct Physical Loss of or Damage to Property at the Jake's Diners.

The Jake's Plaintiffs do not allege that any of their four diners were damaged. Instead, they claim loss of "money that was previously physically arriving" prior to the governmental orders. (Doc. 27, ¶25). This coverage issue turns on the question of whether pure monetary losses constitute "direct physical loss of or damage to property," as that phrase is used in the State Auto Policies. As set forth below, the State Auto Policies do not respond to pure economic losses unrelated to any actual direct loss of or damage to insured property.

#### 1.    Pure economic losses do not constitute "direct physical loss or damage" under the State Auto Policies.

First and foremost, the State Auto Businessowners form only covers "direct physical loss of or damage to property at the described premises."[4] "Covered Property" specifically does not include purely loss of "money." (Doc. 41-1, p. 20; Ex. B, p. 16; Ex. C, p. 20; Ex. D, p. 20). Therefore, the Jake's Plaintiffs' argument that the sole loss of money can

---

[4] The words "direct physical" modify both "loss of" and "damage to." *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 7 Cal.Rptr.3d 844, 849 (Cal. App. 4 Dist. 2003).

constitute a "direct physical loss" of covered property is squarely rejected on the face of the policy, and judgement on the pleadings is therefore mandated.

Furthermore, North Carolina law rejects the notion that a claim solely for economic losses can constitute a "direct physical loss or damage" to property. In *Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. App. 1997), the insured car dealership sought business income coverage for lost profits when a snowstorm caused the dealership to become inaccessible for a week. *Id.* at 251. The court found no business income coverage because "[p]laintiff neither alleged nor offered proof that its lost business income was due to damage to or the destruction of the property, rather all evidence shows that the loss was proximately caused by plaintiff's inability to access the dealership due to the snowstorm." *Id.* at 251-52.

Analogous case law is overwhelmingly consistent with *Harry's Cadillac*, holding that "direct physical loss" requires actual, tangible, permanent, physical alteration of property rather than merely a loss of money. *See, e.g.*, *Pentair, Inc. v. Am. Guar. & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (power outages that cause no injury other than a shutdown of operations do not constitute "direct physical loss or damage"); *Roundabout Theatre Co. v. Contin. Cas. Co.*, 302 A.D.2d 1, 3 (N.Y. App. Div. 2002) (inaccessibility of theater was not "direct physical loss" because "direct physical loss" is "limited to losses involving physical damage to the insured's property."); *J.O. Emmerich & Assocs., Inc. v. State Auto. Ins. Cos.*, No. 06-cv-00722, 2007 WL 9775576, at *3 (S.D. Miss. Nov. 19, 2007) (temporary loss of access to computers due to power outage was not "direct physical loss or damage to" covered property because there was no physical alteration to the data

13

on the computers); *Ross v. Hartford Lloyd Ins. Co.*, No. 18-cv-00541-O, 2019 WL 2929761, at *7 (N.D. Tex. July 4, 2019) ("'physical loss' under the Policy cannot be fairly construed to mean physical loss in the absence of physical damage"); *Huether v. Nodak Mut. Ins. Co.*, 871 N.W.2d 444, 447 (N.D. 2015) (policy providing coverage for "direct physical loss or damage" did not cover economic loss-of-use damages); *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding that the words "direct" and "physical" require "actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves"); *Source Food Technology, Inc. v. U.S. Fidelity & Guarantee Co.,* 465 F.3d 834, 838 (8th Cir. 2006)(holding that loss of income due to beef order that was inaccessible due to governmental health regulations, did not constitute a "physical loss" or damage to covered property.)[5]

The requirement of "direct physical loss of or damage to property" is repeatedly reinforced throughout the State Auto Policies.  For instance, the business income coverage 5(f) only provides coverage "during the period of restoration," which is defined as the period to repair damaged property, but specifically <u>is not to include</u> any increased period "required due to the enforcement of or compliance with any ordinance or law that . . . regulates . . . use."  (Doc. 41-1, p. 52; Ex. B, p. 48; Ex. C, p. 52; Ex. D, p. 52).  Similarly,

---

[5] *See also* 10A Couch On Ins. § 148:46 (3d ed. 2005) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

the Property Loss Conditions, Section E(3), requires the policyholder to include a description of the property involved, take steps to protect the property from further damage, and provide an inventory of the damaged and undamaged property, including quantities, values and amount of loss claimed. (Doc. 41-1, p. 43; Ex. B, p. 39; Ex. C, p. 43; Ex. D, p. 43). All of these conditions are premised upon the presentation of actual "direct physical loss of or damage to property," and not the mere allegation of lost revenues.

> 2.  **The Jake's Plaintiffs' do not allege a necessary suspension that was "caused by" direct physical loss of or damage to insured premises.**

Business income coverage under 5(f) requires a necessary suspension of business that was "*caused by* direct physical loss of or damage to the property at the described premises." This precise issue of whether COVID-19 business suspensions were caused by direct physical damage to property was recently addressed by the U.S. District Court for the Southern District of New York. *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.).[6] In rejecting a motion for preliminary injunction, the court in *Social Life* noted that "what has caused the damage is that the governor has said you need to stay home. It is not that there is any particular damage to your specific property." (Ex.

---

[6] No written opinion has been issued in *Social Life* at the time of filing this brief. A copy of the preliminary injunction hearing transcript is available through the Federal Court's filing system, PACER, and a file-stamped copy is attached as Exhibit E. Courts may take judicial notice of "proceedings in other courts of record." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n. 5 (6th Cir. 2005) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.3d 736, 738 (6th Cir. 1980); *see also Landt v. Farley*, No. 4:12CV0740, 2012 WL 4473209, at *1 n.2 (N.D. Ohio Sept. 26, 2012) (taking notice of filings on PACER in a different lawsuit).

E at p. 9). "The virus is not specifically in your property that is causing damage. It is everywhere." (*Id.* at p. 8). The court concluded:

> I feel bad for your client. I feel bad for every small business that is having difficulties during this period of time. But New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going… This [pandemic] is just not what's covered under these insurance policies.

(*Id.* at p. 16). The Jake's Plaintiffs cannot possibly satisfy the requirements of the Business Income coverage 5(f) when they acknowledge that the suspension of their operations came first, which then caused the alleged direct physical loss of property.

### B. There is No Coverage Under the Civil Authority Additional Provision 5(i).

The State Auto Policies provide Additional Coverage 5(i) for Civil Authority claims wherein: 1) direct physical loss or damage to property caused a dangerous physical condition, 2) which then caused a civil authority action, which 3) prohibits all access to the described premises. (Doc. 41-1, p. 27; Ex. B, p. 23; Ex. C, p. 27; Ex. D, p. 27).

#### 1. There was no "prohibition of access" to the described premises.

Civil authority coverage does not apply where a governmental action specifically allows access to the insured premises. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F. 3d 683, 686-87 (5th Cir. 2011) ("Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."). For Civil Authority coverage to apply, access must be prohibited, not merely limited. *See, e.g., Schultz Furriers, Inc. v. Travelers Cas. Ins.*

16

*Co. of America*, ESX-L-002281-13, 2015 WL 13547667, * 6 (N.J. Super. L. July 24, 2015) (traffic interruptions caused by Hurricane Sandy did not trigger coverage because it was not completely impossible to access the insured store); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 3:09-CV-02391, 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010) (bridge repair that hindered access for majority of customers did not trigger coverage where there were other avenues of access); *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004).

Here, the Jake's Plaintiffs do not and cannot allege any prohibition of access to their premises. To the contrary, the Jake's restaurants touted on their Facebook page: "WE'RE STILL OPEN AND WORKING HARD! Easy Call-in, Online, Curbside, and Delivery Available." (See fn 2, *supra*) There is no "prohibition of access" pled and the publicly available documents demonstrate the opposite.

### 2. The civil authority orders were not issued "in response to" a dangerous physical condition resulting from damage to property.

The Jake's Plaintiffs have not pled that the civil authority actions were "in response to dangerous physical conditions" that resulted in an area "immediately surrounding the damaged property," as the Civil Authority coverage requires. In fact, the civil authority orders were taken in response to the spread of a virus, and not in response to any property damage at any location in the vicinity of all four Jake's Plaintiffs' diners. (Doc. 41-2, p. 2-3; Doc. 41-3, p. 2-3).

In *United Air Lines, Inc. v. Ins. Co. of Pa.*, 439 F.3d 128, 130 (2d Cir. 2006), the policyholder was not entitled to coverage when a civil authority halted flights due to the

17

September 11 terrorist attacks. That closure was for preemptive prevention of terrorism, not the 'result of' the physical damage to the nearby Pentagon, or the authority's need to access it. *See also Kelaher Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* No. 4:19-cv-00693, 2020 WL 886120, \*5 (D.S.C. Feb. 24, 2020) (South Carolina law firm's alleged lost business when it followed a hurricane evacuation order not covered under civil authority provision of policy); *The Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at \*17 (N.D. Ga. Dec. 15, 2004) (civil authority coverage not available for closure following September 11 attacks because "an order . . . that is designed to prevent, protect against or avoid damage is not a 'direct result' of already existing property loss or damage").

Here, the stated purpose of both Executive Orders was to "to provide for the health, safety, and welfare of residents and visitors located in North Carolina" and "to mitigate community spread of COVID-19 and to prevent the further transmission of disease." (Doc. 41-2, p. 2; Doc. 41-3, p. 2-3). The Executive Orders were certainly not taken "in response to dangerous physical conditions resulting from" damaged property in the immediate vicinity of any insured location.

### C. There is No Coverage Under the Extra Expense Additional Coverage 5(g).

The State Auto Policies provide Additional Coverage 5(g) for Extra Expense wherein: 1) direct physical loss or damage to property takes place at the described premises, and 2) that loss or damage causes Extra Expense which would not have been otherwise

18

necessary if the direct physical loss or damage had not taken place. (Doc. 41-1, p. 26; Ex. B, p. 22; Ex. C, p. 26; Ex. D, p. 26).

As previously discussed, the Jake's Plaintiffs have not alleged actual "direct physical loss or to damage to" any of the Jake's Diners. Therefore, the Second Amended Complaint simply has not alleged the prerequisites to coverage under Section 5(g).

**D.** **The Ordinance or Law Exclusion and The Virus Exclusion Clarify the Lack of Coverage in The Absence of <u>Direct Physical</u> Loss or Damage to Property.**

The policies do not cover this claim because it <u>does not present any</u> direct physical loss of or damage to property at the insured premises, and because the civil authority orders were not taken in response to any dangerous physical property damage that prohibited access to the insured premises. In fact, the Ordinance or Law Exclusion clarifies that, if a claim results solely from compliance with a use ordinance, in the absence of direct physical damage, such claim is not intended to be covered. Furthermore, even if a claim presents concurrent causes and resulting *indirect* damages, those damages resulting from the exposure of a virus that "induces physical distress" are also not covered.

**1.** **The claims solely for "loss of use" are barred by the Ordinance or Law Exclusion.**

Exclusion B.1.a. of the State Auto Policies clarifies the language of the insuring agreements by specifying that claims based solely on a government-ordered loss of use, without any accompanying physical loss or damage, are excluded. It precludes coverage for:

> **(1)** The enforcement of or compliance with any ordinance or law:
> **(a)** Regulating the…use…of any property…

19

> **(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:
>
> **(a)** An ordinance or law that was enforced even if the property has not been damaged…

(Doc. 41-1, p. 35-36; Ex. B, p. 31-32; Ex. C, p. 35-36; Ex. D, p. 35-36).

The Jake's Plaintiffs allege loss from "compliance with" governmental orders that restricted the use of their restaurants. Executive Orders Nos. 118 and 121 constitute "Ordinances or Laws" under the plain meaning of those words. Many courts have found similar exclusionary language unambiguous. *Spears v. Shelter Mutual Ins. Co.*, 73 P.3d 865, 867 (Okla. 2003); *Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618, 623 (E.D.La. 1995); *El-Ad Residences at Miramar Condominium Ass'n, Inc. v. Mt. Hawley Ins. Co.*, 2010 WL 8961438, at *12 (S.D. Fla. Sept. 28, 2010); *Reichert v. State Farm General Ins. Co.*, 212 Cal. App. 4th 1543 (Cal. Ct. App. 2012). Furthermore, the exclusion is entirely consistent with a reading of the policy as a whole, which does not intend to cover business income losses in the absence of physical loss or damage to property.

### 2. Even any arguable "indirect losses" are barred by the virus exclusion.

Exclusion B(1)(j) bars coverage for loss or damages caused directly or indirectly by viruses, regardless of any other cause or event that contributes concurrently or in any sequence to the loss. (Doc. 41-1, p. 35, 38; Ex. B, p. 31, 34; Ex. C, p. 35, 38; Ex. D, p. 35, 38).

The plain and ordinary meaning of the word "virus" includes the Coronavirus. Indeed, the Second Amended Complaint specifically and repeatedly describes COVID-19

20

as a "virus." (Doc. 27, ¶6). North Carolina law instructs that insurance contracts must be enforced as written, "without rewriting the contract or disregarding the express language used." *Fidelity Bankers Life Ins. Co. v. Dortch,* 348 S.E.2d 794 (N.C. 1986). Courts across the country have enforced similar exclusions in accordance with their clear and unambiguous language. *See e.g. Doe v. State Farm Fire & Cas. Co.,* No. 2015-0136 2015 WL 11083311, \*2 (N.H. Sept. 21, 2015) ("We conclude that a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole, would understand the policy to exclude all diseases and viruses that can be transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.,* 498 F. App'x 655, 656 (8th Cir. 2013) (holding that insurer established applicability of communicable disease/virus exclusion to a claim for infection of a third-party with HIV); *Clarke v. State Farm Florida Ins.,* 123 So.3d 583 (Fla. Dist. Ct. App. 2012) (holding that communicable disease/virus exclusion unambiguously excluded coverage for a claim for infection of a third-party with herpes).

The Jake's Plaintiffs acknowledge that their policies contain virus exclusions but attempt to avoid the application of this exclusion by alleging that their damages were not actually "caused by the ***virus*** itself," but rather, were due to "public fear and commotion and/or governmental action implemented in an effort to prevent the arrival of the ***virus*** or to mitigate the spread of the ***virus***." (Doc. 27, ¶23). It is this argument that brings the intent of the policy as a whole into focus:

- The policy does not provide business interruption coverage unless the suspension of operations is caused by "direct physical" loss of or damage to property at or near the insured premises.

- To the extent an insured may argue that "public fear or concern" over a virus might cause *indirect losses* that can be crammed into a coverage grant, the policy clarifies that such indirect losses attributable to "a virus that is capable of inducing physical distress" are specifically excluded.

The Jake's Plaintiffs' claimed damages <u>were not caused</u> by any direct physical loss or damage to property. Significantly, to the extent the Jake's Plaintiffs argue that the North Carolina executive orders caused a "direct physical loss" of use of their property, the Ordinance and Law Exclusion and the Virus Exclusion specify that such claims are not covered causes of loss.

## VI.  CONCLUSION

State Auto respectfully requests that this Court grant judgment on the pleadings in its favor and against the Jake's Plaintiffs as to Plaintiffs' Second Amended Complaint and grant State Auto any other and further relief deemed just and appropriate.

Dated: June 25, 2020

/s/ G. Gray Wilson
G. Gray Wilson, NC State Bar No. 7398
NELSON MULLINS RILEY & SCARBOROUGH LLP
380 Knollwood Street, Suite 530
Winston-Salem, NC  27103
Phone: 336-774-3271
Fax: 336-774-3299
gray.wilson@nelsonmullins.com

/s/ David J. Buishas
David J. Buishas
Adam H. Fleischer
BATESCAREY, LLP
191 N. Wacker, Suite 2400
Chicago, IL 60606
Phone: 312-762-3278
Fax: 312-762-3200
dbuishas@batescarey.com
afleischer@batescarey.com

*Attorneys for Defendant State Automobile Mutual Insurance Company*

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing brief does not exceed 6,250 words and therefore complies with Local Rule 7.3(d)(1).

/s/ G. Gray Wilson
G. Gray Wilson, NC Bar No. 7398

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 25, 2020, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to counsel of record for all parties indicated on the case docket.

/s/ G. Gray Wilson
G. Gray Wilson, NC Bar No. 7398

2516457