IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NATTY GREENE'S BREWING COMPANY, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:20-CV-437 |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs, various Greensboro-area restaurant owners and operators, brought this suit against their respective insurance companies. They allege that their insurance policies cover business income losses sustained due to the COVID-19 pandemic and Executive Orders issued in response to the pandemic that suspended indoor dining. The defendant-insurers each move for judgment on the pleadings. The Court defers ruling on the motion as to the claims of the plaintiff Natty Greene's Brewing Co., LLC, and it appears no motion has been made as to the plaintiff Natty Greene's Downtown, LLC. The claims of all other plaintiffs are barred by the virus exclusions in their policies, and the Court will grant the defendants' motions.

### I. Background

As is appropriate at this stage, the facts are taken from the second amended complaint, Doc. 27, which the Court assumes for purposes of the motion to be true. *SD3,*

*LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 418 (4th Cir. 2015). The Court also considers the insurance policies and Executive Orders referenced in the complaint and as to which there is no dispute over authenticity.[1]

The Atlantic Coast Conference and National Collegiate Athletic Association were scheduled to host basketball tournaments at the Greensboro Coliseum between March 9–21, 2020. Doc. 27 at ¶¶ 10–11. Greensboro restaurant and bar owners planned and invested to reap the economic benefits from these tournaments. *Id.* at ¶ 10. But the COVID-19 pandemic exploded shortly before, and the ACC and the NCAA each cancelled their tournaments around Thursday, March 12. *Id.* at ¶ 15.

The virus continued to spread, and on March 17, North Carolina Governor Roy Cooper issued Executive Order No. 118. *Id.* at ¶ 16. The order, which was effective from March 17 through March 31, limited the sale of food and beverages to carry-out, drive-through, and delivery only. Doc. 37-2 at 4. On March 27, Governor Cooper issued Executive Order No. 121, which directed North Carolina residents to stay in their homes except when performing "essential" activities; prohibited gatherings of 10 or more people; and required "non-essential" businesses to cease operations. Doc. 27 at ¶ 17; *see* Doc. 37-3. Restaurants that prepared food for consumption off-premises were

---

[1] "[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Alexander v. City of Greensboro*, No. 1:09–CV–934, 2011 WL 13857, at *6 (M.D.N.C. Jan. 4, 2011) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

considered essential businesses, but food service for consumption on restaurant premises remained prohibited. Doc. 37-2 at 4; Doc. 37-3 at p. 8 ¶ 19. According to the Executive Order, "limitations on person-to-person contact are reasonably necessary to address the public health risk" and to "mitigate community spread of COVID-19 and to reduce the burden on the state's health care providers and facilities." Doc. 37-3 at 3.

The plaintiffs incurred significant financial losses and damages because of "[p]ublic fear and commotion and, significantly, the governmental actions and closures implemented because of and in response to the threat of the virus." Doc. 27 at ¶ 18. To recover these revenues, the plaintiffs submitted claims under their business owner, property, and casualty insurance policies. *Id.* ¶ 19. The defendant-insurers have denied those claims. *Id.* at ¶ 20.

While the operative complaint does not identify which defendant-insurer issued policies for which plaintiff, *see id.*, it appears undisputed from a review of the insurers' answers and the briefing that:

- Republic-Franklin Insurance Co. insures Rio Grande Friendly, Inc. Doc. 37-1.

- Frankenmuth Mutual Insurance Co. insures Natty Greene's Creekside, LLC and Natty Greene's Brewing Co., LLC. Docs. 38-1, 38-2;

- Travelers Casualty Insurance Co. insures EJE, Inc. and Rio Grande #14, Inc. Docs. 40-1, 40-2;

- State Auto Insurance Co. insures The Jake's Plaintiffs (DAAB Inc., Jake's of Battleground LLC, Jake's Diner of Wendover Inc., and Jake's Diner of Drawbridge LLC). Docs. 41-1, 47-2, 47-3, 47-4; and

- Sentinel Insurance Co. insures Rios, Inc. Doc. 55-1.

No defendant admits that it issued a policy to Natty Greene's Downtown, LLC.

3

## II. Procedural History

On April 3, 2020, the plaintiffs filed suit against their insurers in state court. Doc. 1 at 2. The defendants removed the case pursuant to 28 U.S.C. § 1332. Doc. 1. After the plaintiffs filed a second amended complaint, Doc. 27, each insurer answered, *see* Docs. 37, 38, 40, 41, 43, and moved for judgment on the pleadings. *See* Docs. 46, 48, 50, 52, 54. No defendant admits that it issued a policy to Natty Greene's Downtown, LLC, no motion is directed toward the claims of Natty Greene's Downtown, LLC, and Natty Greene's Downtown, LLC did not respond to any of the pending motions. This order therefore does not apply to any claims by Natty Greene's Downtown, LLC.

On October 18, 2020, Natty Greene's Brewing Co., LLC, filed a Chapter 7 Bankruptcy petition. Doc. 96. While the automatic stay "does not apply where, as here, the debtor is the plaintiff in a lawsuit," *MTGLQ Investors, LP v. Guire,* 286 F. Supp. 2d 561, 563 (D. Md. 2003) (quoting *Mitchell v. Fukuoka Daiei Hawks Baseball Club*, 206 B.R. 204, 212 (C.D. Cal. 1997)), "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "[I]n the context of a Chapter 7 bankruptcy, it is the bankruptcy trustee and not the debtor who is the real party in interest with respect to property of the estate, with the right to bring any legal claims that belong to the estate." *Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019); *see also Evergreen Int'l Airlines, Inc. v. Anchorage Advisors, LLC*, No. 3:11-CV-1416-PK, 2014 WL 1413810, at *3–4 (D. Or. Apr. 11, 2014) (granting the plaintiff's motion to substitute the bankruptcy trustee as plaintiff). The parties have not addressed the effect of the bankruptcy, nor has anyone filed a motion to substitute the trustee for plaintiff Natty Greene's Brewing Co., LLC.

4

The Court will defer ruling on the motion for judgment on the pleadings as to the claims

of Natty Greene's Brewing Co., LLC, pending consultation with the parties.

### III.     Material Terms in the Insurance Policies:  Virus Exclusion Clauses

The virus exclusion in the Sentinel policy provides that Sentinel:

> [W]ill not pay for loss or damage caused directly or indirectly
> by . . . [the] [p]resence, growth, proliferation, spread or any
> activity of fungi, wet rot, dry rot, bacteria or virus.

Doc. 55-1 at 125.[2]

The virus exclusion in the State Auto policy provides that State Auto:

> [W]ill not pay for loss or damage caused directly or indirectly
> by . . . [a]ny virus, bacterium or other microorganism that
> induces or is capable of inducing physical distress, illness or
> disease.

Doc. 41-1 at 35, 38.

The virus exclusion clauses in the Republic-Franklin, Frankenmuth Mutual, and

Traveler's policies, which are identical in relevant part, provide that the insurer:

> [W]ill not pay for loss or damage caused by or resulting from
> any virus, bacterium or other microorganism that induces or
> is capable of inducing physical distress, illness or disease.

Doc. 37-1 at 98 (Republic-Franklin Ins. policy issued to Rio Grande Friendly); Doc. 38-1

at 102 (Frankenmuth Mutual Ins. policy issued to Natty Greene's Creekside, LLC); Doc.

---

[2] The Sentinel policy elsewhere does provide limited coverage for virus-related losses.  To
apply, the virus must be the result of an equipment breakdown or "specified cause of loss" other
than fire or lightning.  Doc. 55-1 at 126.  A specified cause of loss is defined as a "[f]ire;
lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion;
vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling
objects; weight of snow, ice or sleet; water damage." *Id*. at 55.  Rios, Inc. did not allege or argue
that coverage was available under this provision.

5

40-1 at 151 (Travelers Ins. policy issued to EJE, Inc); Doc. 40-2 at 114 (Travelers Ins. policy issued to Rio Grande #14).

## IV.    Law

The parties agree that they entered the insurance contracts in North Carolina and that North Carolina law governs in this diversity suit.  Doc. 27 at ¶¶ 2–4; Doc. 37 at ¶ 4; Doc. 38 at ¶¶ 2–3; Doc. 40 at ¶¶ 2–3; Doc. 41 at ¶¶ 3–4; Doc. 43 at ¶ 4; *see also Fortune Ins. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) ("[North Carolina law] mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract.").  In North Carolina, an insurance policy is a contract, and its terms are interpreted in fundamentally the same manner as contract terms:  the goal is to arrive at the intent of the parties when the policy was issued.  *Woods v. Nationwide Mut. Ins.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978).

"Construction and application of insurance policy provisions is a question of law appropriate for summary disposition."  *Prime TV, LLC v. Travelers Ins.*, 223 F. Supp. 2d 744, 749 (M.D.N.C. 2002); *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 141, 388 S.E.2d 557, 562 (1990).  The insurer has the burden to show an exclusion applies.  *Kruger v. State Farm Mut. Auto. Ins.,* 102 N.C. App. 788, 790, 403 S.E.2d 571, 572 (1991).

## V.    Discussion

Each policy expressly excludes coverage for loss or damage caused directly or indirectly by, or resulting from, any virus.  And the plaintiffs specifically alleged that the

6

coronavirus "is a highly contagious airborne virus," Doc. 27 at ¶ 6, which resulted in

government actions and closures that caused the plaintiffs to suffer financial losses. *Id.* at

¶ 18. Thus, the "Plaintiffs have pleaded that COVID-19 is in fact the reason for the

Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the

Orders technically forced the Properties to close to protect public health, the Orders only

came about sequentially as a result of the COVID-19 virus spreading rapidly throughout

the community." *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE,

2020 WL 4724305, at \*6 (W.D. Tex. Aug. 13, 2020); *see also Travelers Cas. Ins. Co. of*

*Am. v. Geragos & Geragos,* No. CV 20-3619 PSG (Ex), 2020 WL 6156584, at \*4 (C.D.

Cal. Oct. 19, 2020) (collecting cases).

The plaintiffs' arguments to the contrary are not persuasive.[3] For example,

extrinsic evidence from the Insurance Services Office is only relevant if the policy

language is ambiguous, which it is not. *Brown v. Ginn*, 181 N.C. App. 563, 567, 640

S.E.2d 787, 790 (2007) ("Extrinsic evidence may be consulted when the plain language

of the contract is ambiguous."); *see also Turek Enters. v. State Farm Mut. Auto. Ins.*, No.

20-11655, 2020 WL 5258484, at \*9 (E.D. Mich. Sept. 3, 2020) ("The parties dispute the

meaning of the ISO circular, but its exact meaning is immaterial. By its terms, the Policy

does not limit the Virus Exclusion to contamination, and Plaintiff has failed to show that

the Virus Exclusion is ambiguous."). Similarly, the rule that exclusions are to be

---

[3] Each plaintiff submitted a separate response in opposition to their respective insurance company's motion for judgment on the pleadings, but they either expressly directed the Court's attention to an argument advanced by a co-plaintiff, *see* Docs. 78 at 11; 79 at 9, or asserted a substantially similar argument.

7

narrowly construed in favor of coverage only applies if policy terms are ambiguous. *Liberty Corp. Capital v. Delta Pi Chapter of Lambda Chi Alpha*, No. 1:09CV765, 2012 WL 3308371, at *2 (M.D.N.C. Aug. 13, 2012) (noting that ambiguous terms "should be construed strictly in favor of coverage"). The plaintiffs' other arguments are equally without merit.

Where, as here, "the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted." *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962). The policies unambiguously exclude coverage for loss or damage caused directly or indirectly by, or resulting from, any virus.[4]

## VI.    Housekeeping Matters

As noted *supra*, this order does not resolve any claims by Natty Greene's Downtown, LLC or Natty Greene's Brewing Co., LLC. Counsel of record for Natty Greene's Brewing Co., LLC shall promptly consult the trustee. All parties shall confer otherwise about the claims of these two entities and about the form of a judgment or judgments. The Court will set the matter for a status conference in December.

---

[4] The plaintiffs contend that their policies provide coverage under the business income provision and the civil authority provision, *see, e.g.*, Doc. 75 at 9–12, each of which covers damages caused by "direct physical loss of or damage to property." *See, e.g.*, Doc. 37-1 at 32, 34. The defendants disagree. *See, e.g.*, Doc. 51 at 16–22. The Court need not resolve questions about coverage provisions since the virus exclusion applies regardless.

8

## Conclusion

Claims for damages incurred due to COVID-19 are unambiguously excluded from coverage under the virus exclusion provisions in the applicable policies. Because the pleadings establish that the plaintiffs cannot prove any set of facts in support of their claims entitling them to relief, the defendants are entitled to judgment on the pleadings. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

It is **ORDERED** that:

1. The defendants' motions for judgment on the pleadings, Docs. 46, 48, 50, 54, are **GRANTED**.

2. The motion for judgment on the pleadings filed by defendant Frankenmuth Mutual Insurance Co., Doc. 52, is **GRANTED IN PART** as to plaintiff Natty Greene's Creekside, LLC and is deferred as to Natty Greene's Brewing Company, LLC.

3. The parties shall consult as to the best way to bring the case to conclusion and be ready for a status conference with the Court to be scheduled shortly.

This the 30th day of November, 2020.

_____
UNITED STATES DISTRICT JUDGE

9